Filed 1/24/23  P. v. Sanchez CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>       Plaintiff and Respondent,<br><br>       v.<br><br>FRANKLIN D. SANCHEZ,<br><br>       Defendant and Appellant. | B314807<br><br>(Los Angeles County<br>Super. Ct. No. VA020059) |

APPEAL from an order of the Superior Court of Los Angeles County.  Roger T. Ito, Judge.  Affirmed.

Emry J. Allen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and Daniel C. Chang, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In 1994, defendant and appellant Franklin D. Sanchez was convicted by a jury of first degree murder (Pen. Code, § 187, subd. (a))[1] and kidnapping (§ 207, subd. (a)), finding true the special circumstance allegation that the murder was committed in the course of a kidnapping (§ 190.2, subd. (a)(17)(B)). He was sentenced to life in state prison without the possibility of parole (LWOP).

Defendant appealed, and we affirmed the judgment. (*People v. Sanchez* (Oct. 1, 1996, B088897) [nonpub. opn.], at p. 7.)

In 2019, defendant filed a petition for resentencing pursuant to former section 1170.95.[2] The trial court issued an order to show cause and held an evidentiary hearing pursuant to former section 1170.95, subdivision (d).

After the evidentiary hearing, the trial court denied defendant's petition. Defendant timely filed a notice of appeal. He argues that (1) the trial court employed the incorrect standard in concluding that he was ineligible for resentencing relief; (2) insufficient evidence supports the trial court's conclusion that he was a major participant in the underlying felony who acted with reckless indifference to human life; and (3) he was 19 years old at the time of the crime, and the trial court failed to consider how his ability to evaluate and respond to any risk must be viewed through the lens of his relative youth and inexperience.

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

[2]     Effective June 30, 2022, section 1170.95 was renumbered section 1172.6, with no change in text (Stats. 2022, ch. 58, § 10).

We affirm.

## FACTUAL BACKGROUND

"[O]n the morning of November 26, 1993, which was the day after Thanksgiving, appellant enticed Mark Albanese to go to the Fullerton house appellant shared with Mark Driskill to 'help [appellant] with some work.' Albanese was initially reluctant because of his concern that appellant might be "set[ting] [him] up" with appellant's friend, Bradley Joe Arrowood. Arrowood was very antagonistic toward Albanese, who had had an affair with Arrowood's wife, and had chased Albanese with a firearm in September 1993, warning him, "'When I get my hands on you, I am gonna kill you.'" Although Arrowood was, in fact, waiting at appellant's house, appellant assured Albanese he was not being 'set up.' Albanese therefore agreed to appellant's request for assistance.

"Because appellant had been transported to Albanese's apartment on Driskill's motorcycle, Driskill took appellant home and returned for Albanese. Upon Albanese's arrival at appellant's house, he was beaten about the face and head, duct tape was placed over his nose and mouth, his wrists were handcuffed and his ankles were bound. Appellant and Arrowood carried the struggling Albanese to the garage, where he was placed in Arrowood's car, covered with a blanket and dumped several miles away near a loading dock at the Flint Ink company in Santa Fe Springs.

"When Albanese failed to return home, his common-law wife, Marty Sutherland, questioned appellant about his disappearance. Appellant claimed to have last seen Albanese at the Buena Park mall on the afternoon of November 26. He reported Albanese had left the mall with a woman. In a

3

subsequent encounter between Arrowood and Sutherland, however, Arrowood confirmed that Albanese was dead and said, "His body will show up sooner or later." At that point, Sutherland notified the police.

"On November 29, 1993, a worker returning to the Flint Ink plant after the Thanksgiving holiday found Albanese's body covered with a blanket. His ankles were still bound and several pieces of additional duct tape were discovered lying nearby. The coroner determined Albanese had died from asphyxiation due to smothering.

"Appellant was interviewed by the Los Angeles County Sheriff's Department on November 30, 1993. On December 2, 1993, deputy sheriffs executed a warrant to search the house appellant and Driskill shared and the Anaheim motel room where Arrowood resided. They discovered a partial roll of duct tape from each location. A scientific comparison of some of the duct tape recovered near Albanese's body and that seized from appellant's residence showed the two possessed identical properties. The tape found in Arrowood's motel room did not match any of the duct tape found at the crime scene.

"Appellant relied upon a duress defense, testifying that he had agreed to invite Albanese to his home to facilitate Arrowood's planned assault only after Arrowood had repeatedly threatened to beat and/or kill appellant and others if appellant refused to capitulate to Arrowood's demands. Notwithstanding Arrowood's coercive tactics, appellant had initially declined to cooperate and even after finally agreeing, had attempted to extricate himself from the situation on multiple occasions, up to and including the point where he shouted at Arrowood for placing a gun to Albanese's head and refused to continue helping Arrowood carry

4

the bound and gagged Albanese to the garage to be place in Arrowood's car. Appellant had also tried to come to Albanese's aid by loosening the duct tape when Albanese said he could not breathe and challenged Arrowood when he saw Arrowood in the garage standing over Albanese with a syringe. These efforts had resulted in Arrowood punctuating his threats of violence against appellant by pointing a gun at him, slapping him and 'beat[ing] [him] up pretty bad.' On one occasion, Arrowood 'kidnapped' appellant and 'slapped [him] around and stuff' in the presence of an 'enforcer' named 'Coco.'

"Despite Arrowood's assaultive behavior toward him, appellant insisted he had no idea Arrowood planned to kill Albanese since Arrowood had consistently spoken of his plan to 'beat up' and possibly publicly humiliate Albanese. Even as Arrowood drove off with the beaten, bound and gagged Albanese, appellant assumed Arrowood was going to handcuff Albanese naked to a street pole 'and it would be over with.'

"Appellant never contacted the police because he feared he would be beaten or killed by Arrowood or one of his cronies, such as 'Coco.'" (*People v. Sanchez, supra,* B088897, at pp. 2–4.)

## PROCEDURAL BACKGROUND

I. *Former Section 1170.95 Petition*

On June 17, 2019, defendant filed a petition to be resentenced pursuant to former section 1170.95. He averred that because he had been convicted of murder under either a felony murder theory or the natural and probable consequences doctrine, he was entitled to resentencing relief.

The trial court appointed counsel to represent him.

5

II. *The People's Opposition*

The People opposed defendant's petition. The People argued that the special circumstance finding rendered defendant ineligible for relief as a matter of law.

III. *Hearing on Defendant's Petition and Trial Court Order*

On July 29, 2020, the trial court determined that defendant had made a prima facie case for relief and issued an order to show cause.

At the evidentiary hearing on March 3, 2021, no party introduced new evidence. The trial court began the hearing by acknowledging that it was required to find beyond a reasonable doubt that defendant was liable for murder under a still valid theory.

Defense counsel then offered argument. Relying extensively on the trial transcripts, he argued that the evidence did not show that defendant, who was 19 years old at the time, was a major participant in the kidnapping who acted with reckless indifference to human life under the factors set forth in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*).

The prosecutor disagreed, arguing that the petition should be denied because the evidence showed beyond a reasonable doubt that defendant was a major participant in the crimes who acted with reckless indifference to human life under the same factors. Alternatively, the prosecutor argued that the same evidence also showed defendant's intent to kill as a direct aider and abettor to murder.

The trial court entertained additional arguments and reminded the prosecutor that he had the burden of proof beyond a reasonable doubt. Without objection, a CD containing "all the

6

transcripts" from defendant's trial was marked as Exhibit 1 and admitted into evidence.

Thereafter, the trial court denied the petition as follows: "I'm going to make the following findings. . . . [¶] [I]n my estimation, there is beyond a reasonable doubt, number one, two factors. That [defendant] was a major participant in the kidnapping and also ultimately that kidnapping resulting in the death of Albanese. That is borne out by his own statements and behavior and some other forensic evidence that was recovered. In particular the fact that there's duct tape. My recollection it matches the duct tape on the victim. I think there's more than one duct tape sample. But he has the actual duct tape that is utilized that ultimately presumably leads to the asphyxiation of the victim.

"[The prosecutor] has also pointed out, which is quite obvious, and that is Albanese was afraid of [Arrowood]. But for [defendant], allaying his fears about whether he was going or why he was coming over, Albanese does not show up and does not end up dead. I mean—I understand this and I understand that this could be . . . factors for a [*People v. Franklin* (2016) 63 Cal.4th 261] determination prospectively. I think they would probably. You'll be given the state of the—the current state of the law.

"But given the nature of this, this is not a passing and spur of the moment decision-making process. This is something that [Arrowood] clearly had in his mind, that [Arrowood] clearly was intending to do.

"And on top of that, I think it's under the [*Toledo*][3] doctrine.  If we are relying upon the statements of [defendant] in part to convict him, then I'm going to rely for the most part in those statements he's afraid of [Arrowood] and he's afraid of [Arrowood] going to kill him and he's afraid.  [Arrowood] is a scary and dangerous man.  Yet when he decides to do—he decides to assist [Arrowood] in luring the victim to a location, he assists [Arrowood] in securing his body.

"We don't know exactly how involved he was in the beating, although he's denied he's involved in any kind of real physical beating of the victim.  But no doubt he is—the reason why [Arrowood]—that Albanese is at the location where the assailant is waiting, ready to effectuate his revenge.

"After, when we talk about *Banks* and *Clark*, after the actual abduction and the time of the duct taping occurs, the fact that [defendant] says, well, you know, I wanted to move his duct tape because I didn't know if he could breathe, in and of itself I would say that is also evidence to suggest just how scary and how dangerous this behavior is.

---

[3]     *People v. Toledo* (1948) 85 Cal.App.2d 577.  Under "the so-called *Toledo* doctrine," our Supreme Court has observed:  "'The courts may sometimes say that the prosecution is "bound by" extrajudicial statements of defendant which are introduced by the prosecution and which are irreconcilable with guilt, but this concept is applicable only where there is no other competent and substantial evidence which could establish guilt.' [Citation.]" (*People v. Burney* (2009) 47 Cal.4th 203, 248.)  "Opinions rendered by the Courts of Appeal subsequent to *Toledo* demonstrate that its holding has been superseded at least in part." (*People v. Burney*, *supra*, at p. 248.)

8

"Whether or not he did move the tape to the side or whether or not he did not because he was afraid that [Arrowood] would kill him because of that, all of that suggests, look, this guy's getting tied up and he's getting tied up so tightly he's going to suffocate. It's extremely distressing even for a 19 year old to see if somebody's being tied up to such an extent it doesn't even look like they're breathing. Then to me that suggest not only that he's a major participant but also that he is acting with reckless disregard.

"And what's more, when he—when the victim is transported and when he is given the opportunity—he's not with [Arrowood] the entire time . . . . Albanese expires in a trunk or blanket wrapped up in some kind of location and dies in the darkness by himself by suffocating to death, when a man who could have saved him and could have intervened given these factors decided what are reasons not do it.

"I understand the factors, I understand, [defense counsel], you pointed out to me. I'm not going to disbelieve. He's a kid and he's acting stupidly. This bottom line though is in my estimation all about a guy dies in the darkness by himself suffocating to death while there's a man out there, who presumably didn't mean him any harm, could have done something about it and he didn't, in my estimation acts with reckless disregard beyond a reasonable doubt.

"Therefore, I believe that the special circumstance that was found true by the jury and that imposed ultimately, an LWOP sentence on him, was valid. And so notwithstanding the arguments to the contrary, [defense counsel], I am going to deny the petition."

As noted in the trial court's written order, its denial was based on its consideration of the parties' arguments and its review of the entire record.

## DISCUSSION

### I. *Relevant law*

Effective January 1, 2019, Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Sen. Bill 1437) was enacted to "amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).)  To accomplish this, Sen. Bill 1437 amended sections 188 and 189.  (Stats. 2018, ch. 1015, §§ 2-3.)  As amended, section 188 provides:  "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime."  (§ 188, subd. (a)(3).)  As added by Sen. Bill 1437, section 189, subdivision (e), provides:  "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven:  [¶]  (1) The person was the actual killer.  [¶]  (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree.  [¶]  (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life."  (See *People v. Ramirez* (2019) 41 Cal.App.5th 923, 928.)

10

Sen. Bill 1437 also added former section 1170.95, now section 1172.6, which provides a mechanism whereby people "who believe they were convicted of murder for an act that no longer qualifies as murder following the crime's redefinition in 2019[] may seek vacatur of their murder conviction and resentencing by filing a petition in the trial court." (*People v. Drayton* (2020) 47 Cal.App.5th 965, 973, overruled in part on other grounds in *People v. Lewis* (2021) 11 Cal.5th 952, 963.)

In order to obtain resentencing relief, the petitioner must file a facially sufficient section 1172.6 petition. (§ 1172.6, subds. (a)(1)-(3), (b)(1)(A).) If a petitioner does so, then the trial court proceeds to section 1172.6, subdivision (c), to assess whether the petitioner has made a prima facia showing for relief, thereby meriting an evidentiary hearing. (*People v. Lewis*, *supra*, 11 Cal.5th at p. 957.)

If the trial court determines that the petitioner has made a prima facie showing of entitlement to relief, it must issue an order to show cause and hold an evidentiary hearing. (§ 1172.6, subd. (c).) At the evidentiary hearing, the parties may rely upon evidence in the record of conviction or new evidence to demonstrate whether the petitioner is eligible for resentencing. (§ 1172.6, subd. (d)(3).) Section 1172.6, subdivision (d)(3), also provides that the trial court may "consider the procedural history of the case recited in any prior appellate opinion." The prosecution bears the burden of proving, "beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (§ 1172.6, subd. (d)(3).) Only if the prosecution cannot meet its burden, and the petitioner prevails, is he entitled to vacatur of the murder conviction and resentencing as set forth in section 1172.6, subdivision (e).

11

We review the trial court's factual findings for substantial evidence. (*People v. Owens* (2022) 78 Cal.App.5th 1015, 1026 ["Substantial evidence supports the trial court's finding, beyond a reasonable doubt, that appellant was a major participant who acted with reckless indifference to human life"].)

II. *The trial court properly denied defendant's petition for resentencing*

A. <u>The trial court employed the correct standard</u>

The trial court properly denied defendant's petition for resentencing because, after the evidentiary hearing, the trial court acted as an independent factfinder and determined, beyond a reasonable doubt, that he was guilty of murder under current law.[4] (*People v. Duchine* (2021) 60 Cal.App.5th 798, 813–814.)  In fact, it expressly stated that it was making its findings "beyond a reasonable doubt" several times.  And, it acknowledged its role to act as an independent factfinding by repeatedly stating that its conclusion was based upon "my estimation" of the evidence.

To the extent defendant suggests that the trial court erred because it did not determine whether the jury actually rested its verdict on a still-viable theory of murder, he is mistaken.  The plain language of section 1172.6, subdivision (d), confirms that at the evidentiary hearing, the prosecution must convince the trial court, beyond a reasonable doubt, that defendant is guilty of murder.

---

[4]     In reaching this conclusion, we do not adopt the People's argument that the jury's true finding on the special circumstance (§ 190.2, subd. (a)(17)) precluded defendant from making a prima facie case for relief under Sen. Bill 1437.  (See *People v. Strong* (2022) 13 Cal.5th 698, 721.)

B. <u>Substantial evidence supports the trial court's findings</u>

And substantial evidence supports the trial court's findings. The evidence shows that defendant was actively involved in the brutal kidnapping and murder of Albanese. In the weeks leading up to these crimes, defendant told a friend that he was helping Arrowood recover something that Albanese owed Arrowood. About a week before the crimes, defendant and Arrowood were seen having a discussion during which Arrowood carried a gun in his hand. Defendant testified that Arrowood "always had his gun." This evidence establishes that defendant knew that Arrowood could be violent.

Furthermore, on the morning of the kidnapping, defendant enticed Albanese to go to the Fullerton house that defendant shared with Driskill to "help [defendant] with some work." Albanese was initially reluctant because of his concern that defendant might be "set[ting] [him] up" with defendant's friend, Arrowood. Arrowood was very antagonistic toward Albanese, who had had an affair with Arrowood's wife, and had chased Albanese with a .45-caliber firearm in September 1993, warning him, "'"When I get my hands on you, I am gonna kill you."'" Although Arrowood was, in fact, waiting at defendant's house, defendant assured Albanese he was not being "'set up.'" Thus, Albanese agreed to defendant's request for assistance. As we observed in our prior opinion affirming the judgment of conviction, "[t]here was no question that Albanese was the victim of a kidnapping and that appellant played a pivotal role in the events leading up to and culminating in Albanese's abduction." (*People v. Sanchez*, *supra*, B088897, at p. 5.)

Furthermore, as the trial court recognized in denying defendant's petition, there was also substantial evidence that

13

Arrowood had committed violent acts in the past to put defendant on notice of a particular risk of death that the kidnapping posed. Defendant relied upon a duress defense, testifying that he agreed to invite Albanese to his home to facilitate Arrowood's planned assault only after Arrowood had repeatedly threatened to beat and/or kill defendant and others if defendant refused to capitulate to Arrowood's demands.

And, defendant was physically present at the crime scene, he was in a position to facilitate or prevent the actual murder, and his actions played a particular role in Albanese's death. (*People v. Garcia* (2020) 46 Cal.App.5th 123, 148.) Presence is important to culpability because it allows defendants to observe their cohorts' actions and demeanors and determine whether their behavior tends to suggest a willingness to use lethal force. (*Clark, supra*, 63 Cal.4th at p. 619.) Presence also provides defendants with the opportunities to act as restraining influences on their cohorts and to render aid to wounded victims. (*Ibid.*)

Here, when Albanese arrived at defendant's house, defendant went into the bedroom where he found Arrowood. At the time, defendant knew that Arrowood stored his gun in a little aluminum box in the bedroom. Defendant encouraged Arrowood to beat Albanese by saying, "If you are gonna kick his ass, get out there and kick his ass." Defendant followed Arrowood (now armed with his gun) out of the bedroom and into the living room where Albanese was sitting on the couch. Albanese was beaten about the face and head, duct tape was placed over his nose and mouth, his wrists were handcuffed, and his ankles were bound. Defendant and Arrowood carried the struggling Albanese to the garage.

Albanese's pleas for mercy were loud enough to be overheard by someone in another room. Albanese suffered contusions and bruises to both eyes, abrasions to the right side of his face, and blunt force injuries to his head and face. Even assuming that the trial court credited defendant's testimony that he helped Albanese breathe by pushing the duct tape away from his nose, this merely shows that defendant was keenly aware of the mortal danger Albanese faced.[5]

Defendant's reckless indifference to human life did not end there. Once he helped Arrowood carry Albanese into the garage, Albanese was placed in Arrowood's car, covered in a blanket, and dumped several miles away near a loading dock at the Flint Ink company in Santa Fe Springs. Assuming Albanese was still alive as the car drove away,[6] he was badly beaten, bound, and helpless. Defendant knowingly left him at the mercy of Arrowood, a man that defendant knew was extremely violent, armed with a gun, and had threatened to kill defendant and others moments earlier. The risk of mortal danger in that situation was grave, and defendant's conduct unquestionably demonstrated reckless indifference to human life. (See *Banks*, *supra*, 61 Cal.4th at p. 803.)

The duration of the felony also supports the finding that defendant acted with reckless indifference to human life. "Where

---

[5] Defendant's differing characterization of this evidence amounts to a request that we reweigh the evidence, something we cannot and will not do. (*People v. Earp* (1999) 20 Cal.4th 826, 887.)

[6] We do not know if Albanese was alive as the car drove away or if he was killed later, when defendant was not present.

15

a victim is . . . restrained in the presence of perpetrators for prolonged periods, 'there is a greater window of opportunity for violence' [citation], possibly culminating in murder." (*Clark*, *supra*, 63 Cal.4th at p. 620.)

Here, the evidence demonstrates that a considerable amount of force and effort was involved in subduing Albanese. Duct tape was used to bind and gag Albanese, and he started yelling that he could not breathe. The autopsy evidence showed Albanese died as a result of asphyxia due to smothering. Photographs of his corpse indicate that an object, such as tape, prevented him from breathing. The defensive injuries found on Albanese's knuckles suggest a prolonged struggle. This evidence supports the reasonable conclusion that all of the effort used to restrain Albanese consumed a substantial amount of time, increasing the risk of harm and death.

C. <u>The trial court considered defendant's youth and inexperience</u>

Defendant's argument notwithstanding, the trial court did consider defendant's youth and inexperience when it denied his petition for resentencing. [7] Defense counsel repeatedly brought

---

[7] Recently, several Courts of Appeal have weighed in on whether a defendant's youth is a factor to be considered whenever a *Banks*/*Clark* analysis is conducted for a defendant who was a minor at the time of the offenses. (See, e.g., *In re Moore* (2021) 68 Cal.App.5th 434, 439; *In re Harper* (2022) 76 Cal.App.5th 450, 470.) Those cases are readily distinguishable from the instant appeal because defendant here was not a minor when the crimes were committed; he was 19 years old. That said, assuming without deciding that youth is a factor that must be considered (even if the defendant was not a minor), the trial court

up defendant's age at the time of the crimes and encouraged the trial court to consider that as a mitigating factor in the *Banks/Clark* analysis. And, the trial court expressly acknowledged defense counsel's argument about age, and invited the prosecutor to respond. The prosecutor indicated that a petitioner's youth might be a relevant consideration, but argued that defendant was an adult when he committed the crimes and that his age did not outweigh the other factors under *Banks* and *Clark*. Thereafter, the trial court carefully considered the parties' arguments and reasonably concluded that defendant's age and inexperience did not counterbalance the other factors under its *Banks/Clark* analysis. (See *People v. Owens*, *supra*, 78 Cal.App.5th at p. 1026 [noting that the trial court considered the petitioner's youth in its *Banks/Clark* analysis but found that other evidence supported a finding that he was a major participant who acted with reckless indifference to human life].) We find no error in the trial court's analysis and conclusion.

did in fact consider defendant's youth at the time it denied defendant's petition for resentencing.

17

## DISPOSITION

The order denying defendant's former section 1170.95 petition is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, Acting P. J.
ASHMANN-GERST


We concur:


_____, J.
CHAVEZ


_____, J.
HOFFSTADT